UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 7:22-cr-00469-LSC-SGC-1 |
| ) | |
| ) | |
| JOSHUA BERNARD LEWIS, ) | |
| ) | |
| Defendant/Movant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the Court on a Motion to Suppress evidence and statements filed by Defendant, Joshua Bernard Lewis ("Lewis"). (Doc. 34.) Upon consideration, the Court finds that the motion is due to be denied, and the evidence and statements will not be suppressed.

**I.    PROCEDURAL HISTORY**

Lewis has been charged by indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) On May 30, 2024, Lewis filed the instant motion, seeking to suppress all evidence and statements obtained during law enforcement's traffic stop of the vehicle he was driving on June 11, 2022. (Doc. 34). The United States filed a response in opposition to the motion.

1

(Doc. 35). The Court conducted an evidentiary hearing on the motion on June 27, 2024.

**II.    FACTS**

At the suppression hearing, the government called one witness: Elijah Rodriguez ("Officer Rodriguez"). At the time of Lewis's traffic stop, Officer Rodriguez was a Tuscaloosa Police Officer and a Field Training Officer. (Suppression hearing transcript at 5-6, 23-24.) Officer Rodriguez's body camera footage was also played at the hearing and entered into evidence as Government's Exhibit 1. (*See* Doc. 36.) The following summary is taken from Officer Rodriguez's testimony and the video footage.

During the day on June 11, 2022, Officer Rodriguez was on patrol in the area of 2219 Greensboro Avenue in Tuscaloosa. (Transcript at 6-7.) He was traveling northbound on Greensboro Avenue when he observed a red Hyundai traveling southbound. *Id.* at 7. As they passed each other, Officer Rodriguez looked in his driver's side mirror and observed that the Hyundai had a dealer drive-off tag rather than a State of Alabama tag. *Id.* at 7. Officer Rodriguez initiated a traffic stop of the Hyundai for failing to register a vehicle. *Id.* at 7-8.

Officer Rodriguez approached the Hyundai and observed the driver of the vehicle, Lewis, and a male passenger in the front passenger seat. *Id.* at 9. The

driver's side window was rolled down. *Id.* at 9. Officer Rodriguez informed Lewis that the reason for the traffic stop was because the vehicle he was operating did not have a tag displayed. *Id.* at 9-10. Lewis provided a bill of sale indicating that he had purchased the vehicle on May 15, 2022, as well as his insurance card. *Id.* at 10. Officer Rodriguez asked Lewis for a driver's license, and Lewis produced one. *Id*. at 9. Officer Rodriguez explained that Lewis had 20 days from the date of purchase to obtain a tag. *Id.* at 10. Lewis stated that he was aware of the 20-day grace period but that he had to put the car in the repair shop after he purchased the vehicle and, as such, Lewis was unable to obtain a tag. *Id.* at 10.

During this conversation, Officer Rodriguez observed that Lewis was shaky and fidgety, and he smelled the odor of marijuana emitting from the vehicle. *Id.* at 11. Officer Rodriguez asked Lewis about appearing nervous, and Lewis responded that he was nervous around police officers because they are killing black folks. *Id.* at 11-12. Officer Rodriguez asked Lewis about the smell of marijuana, to which Lewis responded that both he and the passenger were recently at a residence and while there had smoked some marijuana within the past 20 minutes. *Id.* at 11. Officer Rodriguez asked if any marijuana was in the vehicle, and Lewis stated that he had a small bag in his right front pocket. *Id.* at 12.

Officer Rodriguez stated that he then became concerned for the safety of the driver operating the vehicle since he might be intoxicated. *Id.* at 13. Officer Rodriguez asked Lewis if there were any weapons in the vehicle. *Id.* at 13-14. Lewis did not say anything but laughed and smiled. *Id.* at 14. Officer Rodriguez asked Lewis if his response meant that Lewis had a weapon in the vehicle, and Lewis said yes. *Id.* Officer Rodriguez told Lewis not to reach for the weapon but to put his hands on the steering wheel. *Id.* Instead, Lewis immediately reached under his seat and retrieved a gun. *Id.* Officer Rodriguez backed up, put his hand on his weapon, and told Lewis to drop the gun. *Id.* at 15. Lewis dropped the gun in his lap. *Id.* Officer Rodriguez retrieved the gun, placed it on the roof of Lewis's vehicle, and called for backup. *Id.* When asked, Lewis stated that the gun belonged to him but that he did not have a permit for it.

A second officer arrived and stood at the passenger side door of the vehicle. *Id.* at 16. Officer Rodriguez asked Lewis to get out of the vehicle and handcuffed him. *Id.* at 16. Officer Rodriguez stated that at that point, Lewis was being detained for a drug investigation based on the fact that Officer Rodriguez smelled marijuana and Lewis admitted that he had smoked it and that it was on his person. *Id.* at 16-17. Officer Rodriguez searched Lewis, finding a small plastic bag in his front right pocket that contained thirty pills that Officer Rodriguez believed to be ecstasy. *Id.*

at 17. Officer Rodriguez asked the passenger if there were any other weapons in the vehicle, and he stated that he had a backpack in the back seat that contained two firearms. *Id.* at 18. The passenger was also removed from the vehicle, handcuffed, and searched. *Id.* at 19. Lewis and the passenger were placed in two separate patrol vehicles, a third officer also arrived, and the officers searched the vehicle, finding a small bag of marijuana, a small bag of methamphetamine, a half full bottle of tequila, and two firearms in the backpack. *Id.* at 19-20.

Officer Rodriguez then approached Lewis in the back of the patrol car, advised Lewis of his *Miranda* rights, and Lewis nodded his head, indicating that he understood his rights. *Id.* at 21. Officer Rodriguez asked him if he'd be willing to answer some questions, and Lewis asked for one of the police chiefs to arrive and said then he would talk. *Id.* Officer Rodriguez asked him a second time, telling him that he would ask the questions and it was up to Lewis if he wanted to answer them or not, and Lewis's response was that it depended on the questions. *Id.* Officer Rodriguez asked Lewis if the marijuana, methamphetamine, ecstasy, and the gun under the seat were his, and he stated that they were. *Id.* Lewis also stated that he would claim ownership of the other two guns in the backpack to save his friend from going to jail. *Id.* at 22. Lewis stated that he had bought his gun on the street. *Id.*

### III. DISCUSSION

Lewis raises two claims. First, he contends that law enforcement violated his Fourth Amendment right to be free from unreasonable searches and seizures due to officers engaging in a "fishing expedition" to develop articulable suspicion of criminal activity or probable cause to search his vehicle, and by prolonging the stop longer than was necessary to resolve the reason for initiating the traffic stop. Second, Lewis contends that law enforcement violated his Fifth Amendment right to be free from self-incrimination. Particularly, relying upon *Missouri v. Seibert*, 542 U.S. 600 (2004), Lewis argues that since he gave a pre-*Miranda* confession, his statements made post-*Miranda* are inadmissible. Each argument is addressed in turn.

**A. Traffic Stop**

In the context of a lawful traffic stop, a seizure is unlawful "if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (cleaned up). An officer may prolong a traffic stop beyond its legitimate purpose only in the limited circumstances where there is "objectively reasonable and articulable suspicion illegal activity has occurred or is occurring" or if the driver consents. *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). However, when a

vehicle is stopped for a motor vehicle infraction, the police may not engage in a "fishing expedition" to develop articulable suspicion of criminal activity. *Id.* at 1221.

Here, Officer Rodriguez stopped Lewis because the vehicle he was operating did not have a state tag displayed. Alabama law holds that failure to register a vehicle within 20 calendar days of the date of purchase or acquisition can result in apprehension by law enforcement and, upon conviction, the operator of the vehicle shall be fined not less than twenty-five dollars. *See* Alabama Code Title 32, Motor Vehicles and Traffic § 32-6-65. Officer Rodriguez initially engaged Lewis with questions directly related to the stop. Officer Rodriguez advised Lewis of the reason for the stop, and Lewis replied by providing Officer Rodriguez with a copy of the bill of sale for the vehicle. The conversation, still relating to the reason for the stop, turned towards the number of days that Lewis had the car and his failure to comply with the 20-day grace period.

However, during this exchange, Officer Rodriguez indicated that he smelled marijuana, and he asked Lewis about the smell of marijuana. Lewis confirmed that he had just smoked marijuana prior to driving the vehicle. Officer Rodriguez testified that at that point he was concerned for the safety of the driver because he might be intoxicated. Officer Rodriguez inquired as to whether there were any firearms in the vehicle. *See United States v. Hernandez*, 418 F.3d 1206, 1211 (11th

Cir. 2005) (stating that once an officer develops reasonable suspicion, he has a duty to investigate more). Lewis paused, smiled, and laughed, which indicated to Officer Rodriguez that there could be a firearm in the vehicle. Lewis then admitted that he had a firearm in the vehicle. Although Officer Rodriguez told Lewis not to reach for the firearm, Lewis retrieved it anyway, and Officer Rodriguez obtained it from him.

In sum, during the traffic stop, Officer Rodriguez only asked questions that were directly related to the lawful traffic stop and questions in furtherance of his duty to investigate ongoing criminal conduct. Officer Rodriguez had reasonable suspicion of criminal activity resulting from the smell of marijuana, Lewis's statement that he had smoked marijuana prior to driving the vehicle, and Lewis's affirmative response concerning weapons in the vehicle. The inquiries about the marijuana and weapons that Officer Rodriguez asked of Lewis were permissible, even though the traffic stop was prolonged. They do not constitute a "fishing expedition" to develop articulable suspicion of criminal activity because Officer Rodriguez immediately smelled the odor of marijuana once he began talking with Lewis.

### B. *Miranda*

Lewis contends that his post-*Miranda* statements, which were made after the investigative preliminary questioning associated with the lawful traffic stop,

8

should be suppressed because they run afoul of Seibert, 542 U.S. 600. The facts and circumstances associated with *Seibert* are not comparable to the facts here.

As an initial matter, pre-custodial questioning does not require that an individual be given *Miranda* warnings. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). A seizure does not necessarily constitute custody. *Id.* at 1310. "A person is in custody for *Miranda* purposes only when there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (quotation omitted).

Here, Officer Rodriguez's preliminary questions about Lewis's tag and registration of the vehicle concerned the nature of the lawful stop. Shortly thereafter, Officer Rodriguez told Lewis that he smelled marijuana, and Lewis admitted to smoking marijuana earlier. Officer Rodriguez then asked if there were any weapons in the vehicle and Lewis indicated that he had a firearm in the vehicle. Lewis was not in "custody"—as that term is understood in the context of *Miranda*—during this exchange, and each of these questions were investigative in nature once Officer Rodriguez obtained reasonable suspicion of criminal activity.

After Officer Rodriguez separated Lewis and the other passenger, put both in handcuffs, searched each, and placed each in separate patrol cars, the officers searched the vehicle, finding additional criminal evidence. Officer Rodriguez then

approached Lewis and advised him of his *Miranda* rights. Lewis admitted that all of the items found in the vehicle belonged to him. This sequence of events does not violate the Supreme Court's decision in *Siebert*. In *Seibert*, officers arrested the defendant, did not read her her *Miranda* rights, questioned her for 30 to 40 minutes at the police station, and obtained a confession. 542 U.S. at 604-05. They then gave her a 20-minute break, returned, advised her of her rights, and continued the interview, confronting her with her pre-*Miranda* statements, thus obtaining another confession. *Id.* at 605. The Supreme Court noted that the first instance of questioning was "systematic, exhaustive, and managed with psychological skill." *Id*. at 616. The Court held that because the interrogation was nearly continuous, the second statement was clearly the product of the invalid first statement and should have also been suppressed. *Id.*

In contrast here, Officer Rodriguez's pre and post-*Miranda* questions were different, and the second set of questions was not a direct continuation of the first. Officer Rodriguez's initial questioning while Lewis was still inside his vehicle was merely investigative because Rodriguez obtained articulable suspicion that criminal activity was occurring after smelling the marijuana. His second post-*Miranda* questions concerned a different topic: whether Lewis admitted to possession of all of the criminal evidence that the officers had just found inside his vehicle after

searching it: the marijuana, ecstasy, methamphetamine, and three guns. Thus, Lewis's post-warning statements are admissible.

## IV.  CONCLUSION

For the aforementioned reasons, Lewis's motion to suppress (doc. 34) is hereby **DENIED**. The evidence and statements will not be suppressed.

**DONE** and **ORDERED** on July 30, 2024.

_____
L. Scott Coogler
United States District Judge

160704